UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH D. BARKSDALE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WARDEN OAK SMITH, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-05221 BLF (PR)<br><br>**ORDER GRANTING DEFENDANT RIPPBERGER'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CLAIMS AGAINST JOHN DOE DEFENDANTS**<br><br>(Docket No. 28) |

Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against prison staff at San Quentin Rehabilitation Center ("SQRC"), where he is currently confined. Dkt. No. 6. The Court found the complaint stated cognizable claims against "Ad-seg" Sgt. Rippberger[1] and other unidentified officers. Dkt. No. 12. Plaintiff was given an opportunity to amend other deficient claims, but did not file an amended complaint in the time provided. *Id.* at 3. Therefore, on April 12, 2024, the Court ordered the matter to proceed on the cognizable claims and the deficient claims were dismissed. Dkt. No. 14.

---

[1] Plaintiff identified this defendant as "Ripenburger" in the complaint. Dkt. No. 6 at 2. However, the CDCR's report of E-Service Waiver identified this defendant as "W. Rippberger." Dkt. No. 17. Plaintiff has filed no response contesting this identification.

Defendant Rippberger filed a motion for summary judgment on the grounds that Plaintiff cannot create a genuine factual dispute as to one or more of the elements of his cause of action, and Defendants is entitled to judgment as a matter of law. Dkt. No. 28.[2] Plaintiff did not file an opposition although given an opportunity to do so. His last filing in this matter was a motion for an extension of time to file an opposition on January 30, 2025. Dkt. No. 29. The Court granted that motion, extending Plaintiff's deadline to February 20, 2025. Dkt. No. 30. To date, Plaintiff has had no further communication with the Court.

## DISCUSSION

### I. Statement of Facts[3]

This complaint is based on Plaintiff's claim that on May 25, 2023, he was assaulted by an unidentified officer who entered his cell and began battering him, and that other officers were present and failed to intervene. Dkt. No. 6 at 2-3. Defendants assert that medical records show no injuries from this alleged incident and that any injuries Plaintiff had at the time were from a fall that occurred days before. Dkt. No. 28 at 2.

On May 23, 2023, Plaintiff was injured and sent to Marin General Hospital ("MGH"). Littlefield Decl. ¶ 3 (Dkt. No. 28-4). The doctor's notes from that hospital visit indicate that Plaintiff reported feeling lightheaded and/or balance, falling, and striking his head on the bars in his cell. *Id.*, Ex. A at 1 (Dkt. No. 28-5). At his deposition, Plaintiff stated that he fainted while standing on his toilet in his cell and

---

[2] In support of his motion, Defendant submits the following: (1) declaration of A. Fajardo, the Use of Force Coordinator at SQRC, Dkt. No. 28-1; (2) declaration of Defendant Rippberger, Dkt. No. 28-2; (3) declaration of S. Littlefield, a health records technician at SQRC, along with exhibits containing authenticated copies of excerpts from Plaintiff's medical records, Dkt. Nos. 28-3, 28-4; (4) declaration of Deputy Attorney General N. Guerrero, counsel for Defendant, with an exhibit containing excerpts from the transcript of Plaintiff's remote deposition taken on November 5, 2024, Dkt. Nos. 28-5, 28-6.

[3] The following facts are undisputed unless otherwise indicated.

2

suffered a concussion and a broken nose. Guerrero Decl., Ex. A (Pl's Dep. at 30:4-15, 16-24) (Dkt. No. 28-6); Dkt. No. 6 at 8. The doctor noted that Plaintiff had experienced an acute head injury, some cervical strain, a fracture of his nasal bone, and lightheadedness. Littlefield Decl. ¶ 3, Ex. A at 4 (Dkt. Nos. 28-3, 28-4). Plaintiff was discharged the following day, May 24, 2023. *Id.* at 7.

According to Plaintiff, on May 25, 2023, he requested to speak to the tier officer so he could see a clinician. Dkt. No. 6 at 5. Plaintiff spoke to unidentified officers multiple times, seeking a ranking official to help him see a clinician. Pl's Dep. at 54:15-23. In an effort to get the attention he sought, Plaintiff covered his cell windows, violating CDCR policy involving routine safety checks by officers to ensure inmate well-being. *Id.* at 63:20-64:11.

Defendant Rippberger at this time was running a classification committee – an assignment where officials ascertain inmate placement at the facility – when he received a radio transmission concerning an unresponsive inmate. Rippberger Decl. at ¶ 3 (Dkt. No. 28-2). Defendant Rippberger and another correctional officer responded to the cell identified in the transmission, which was Plaintiff's cell. *Id.* Defendant attempted multiple times to speak with Plaintiff, to no avail. *Id.* ¶¶ 3-4. Defendant also detected the smell of feces and urine from the cell. *Id.* ¶ 5. Based on Plaintiff's failure to respond, his windows being completely obstructed, and the scent emanating from the cell, Defendant Rippberger determined Plaintiff was in need of assistance. *Id.* ¶ 6.

Defendant Rippberger informed Control[4] that he would open Plaintiff's cell to confirm Plaintiff's safety. *Id.* ¶ 7. Upon opening the cell, Plaintiff was awake and sitting on the floor. *Id.* ¶ 8. Defendant and the other officer ordered Plaintiff to lay on his bed and subject to handcuffing; Plaintiff complied. *Id.* ¶ 9.

---

[4] According to Defendant Rippberger, Control refers to a "substation in the building that assists correctional staff by confirming orders, calling for additional or outside aid, and other miscellaneous duties." Rippberger Decl., fn. 2.

3

According to Plaintiff, the other officer then began battering him. Dkt. No. 6 at 3. Specifically, Plaintiff alleges that he was thrown on to the bed by the unknown officer who then "wrenched" his left arm. *Id.* at 5. Plaintiff alleges that he was struck on the head twice, causing him to nearly black out. *Id.* at 6. These actions were allegedly accompanied by demeaning comments from an unknown source. *Id.* Plaintiff claims that after he was handcuffed, the officer dragged Plaintiff out, to lie his side outside the cell. Pl.'s Dep. at 80:1-7.

According to Defendant Rippberger, Plaintiff complied with the orders to cuff up and, thereafter, Plaintiff stood up on his own, exited the cell with the other officer, and was sat on the ground. Rippberger Decl. ¶ 10. From the moment his cell was opened, Plaintiff was fully compliant. *Id.* ¶ 11. By this point, medical personnel had arrived and proceeded to take Plaintiff to the Treatment and Triage Area ("TTA"), an urgent care-like location for the facility. *Id.* ¶ 12. Defendant Rippberger states that at no point during this incident did he use force on Plaintiff nor did he observe the other correctional officer use force, even when handcuffing Plaintiff on his bed, or use disrespectful or derogatory remarks towards Plaintiff. *Id.* ¶¶ 13-15. Defendant Rippberger also states that he does not recall any other officers being present for this incident. *Id.* ¶ 17. Thereafter, Defendant Rippberger resumed his duties with the classification committee. *Id.* ¶ 16.

Plaintiff was evaluated three separate times after the alleged incident that day. Dkt. No. 28 at 4. First, Plaintiff was seen by RN Ramirez in the Triage and Treatment Area ("TTA") in response to a medical code for "suicidal." Littlefield Decl. ¶ 4, Ex. B. The progress notes from that visit describe Plaintiff as agitated and angry. *Id.* Plaintiff stated that he "got beat up by custody" but the nurse wrote: "no trauma noted not swelling no injuries observed." *Id.* Nurse Ramirez also noted that Plaintiff had not been extracted from his cell and arrived at the TTA in a wheelchair. *Id.* Although Plaintiff stated that he was bleeding from his nose, the nurse indicated "no blood noted." *Id.* Plaintiff left the TTA in a wheelchair. *Id.*

4

Plaintiff was next evaluated by a licensed clinical social worker in concern for his mental health. *Id.* ¶ 5, Ex. C. Plaintiff stated that he was hit in the face and leg by an officer; he insisted that the social worker should "look at [his] face." *Id.* The social worker's progress notes indicate that there was no injury or redness visible, and that the incident Plaintiff was describing was "unclear." *Id.* The notes state that there was "not a cell extraction and there are no visible physical injuries." *Id.* The interview was then terminated at Plaintiff's request. *Id.*

Lastly, Plaintiff was evaluated in the TTA later that day by another registered nurse, RN Long, who was tasked with completing a 7219 form (medical evaluation slip showcasing injuries). *Id.* ¶ 6, Ex. D. Plaintiff stated that he had been denied healthcare all day, and that he had a broken jaw, dislocated knees, and back out of alignment. *Id.* However, the form shows that no injuries were found anywhere on Plaintiff's body. *Id.*

According to Plaintiff, there was video corroboration of the incident. Dkt. No. 6 at 7; Pl's Dep. at 115:10-20. Plaintiff also stated that he had witnesses but could not recall their names at the time. Pl's Dep. at 116:20-25. According to Defendants, no video surveillance footage existed at SQRC at the time of the allegation, as video surveillance was not implemented until December 2023. Fajardo Decl. ¶ 3 (Dkt. No. 28-1). Defendants also submit the declaration of A. Fajardo, the Use of Force Coordinator at SQRC, whose duties include reviewing use of force incidents and staff reports to ensure compliance with CDCR policy. *Id.* ¶ 1. Mr. Fajardo states that he looked for materials concerning an assault by staff on May 25, 2023, but found no none concerning this alleged incident. *Id.* ¶ 2.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the

5

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could

6

reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*

### A.    <u>Failure to Protect/Intervene</u>

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official may be liable for failure to intervene if he or she is present when another official uses excessive force against a prisoner. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.*

Defendant asserts that Plaintiff cannot raise a genuine dispute that he faced a serious risk of injury. Dkt. No. 28 at 5. Defendant acknowledges that while Plaintiff's allegations regarding the use of force are alarming, his medical records do not show that he

7

suffered any harm. *Id.* at 6. The nurse who examined him after the alleged incident recorded that there were no signs of physical injury. *Id.* Defendant points out that the notes from Plaintiff's visits with a social worker and another nurse later that day also indicated that no injuries were observed. *Id.*, Exs. C, D. Defendant also asserts that even if there were injuries to note on the day of the incident, Plaintiff would not be able to show they were attributable to the unidentified officer. *Id.* Defendant points out that Plaintiff stated that he had just returned from the hospital shortly before the incident, having been treated for a concussion and broken nose. *Id.* Lastly, Defendant contends that Plaintiff has failed to produce any evidence that corroborates his claim. *Id.* Defendant points out that at deposition, Plaintiff stated he would rely on witnesses and video surveillance, but he could not recall the names of those witnesses and SQRC did not have video surveillance at the time. *Id.* at 6-7. Defendant also points out that Plaintiff expressed at deposition that he did not know what Defendant Rippberger did or did not do because he could not see from the bed where his face was pressed into the mattress. *Id.* at 7. In response, Plaintiff has filed no opposition to contest Defendant's motion.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute as to any material fact relating to Plaintiff's claim that Defendant Rippberger failed to intervene. First of all, Defendant's argument based on the lack of injury to Plaintiff is not persuasive because the extent of any injury inflicted is only one of the factors considered in evaluating an excessive force claim. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Rather, the undisputed evidence shows a lack of evidence to establish the second prong of an Eighth Amendment claim – Defendant Rippberger's subjective knowledge. Plaintiff's claim against Defendant Rippberger is dependent upon his excessive force claim against an unidentified officer. Defendant argues that no excessive force occurred while Plaintiff claims that it did. The Court must construe the facts in the light most favorable to Plaintiff. However, even if it were true that the unknown officer used excessive force, the

8

Defendant Rippberger states that what he saw was Plaintiff complying with orders to cuff up, standing up on his own, exiting the cell with the other officer, and sitting on the ground.  *See supra* at 4.  Defendant Rippberger states that he did not observe the other officer use force.  *Id.*  In other words, Defendant Rippberger was not aware of any excessive risk to Plaintiff's safety.  If Defendant Rippberger was not aware of any an excessive risk to Plaintiff's health or safety, then he could not have been deliberately indifferent to it.  There is simply no evidence that Defendant Rippberger was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he also drew the inference.  *See Farmer*, 511 U.S. at 837.  In response, Plaintiff has failed to come forth with evidence from which a jury could reasonably render a verdict in his favor.  *In re Oracle*, 627 F.3d at 387.

Based on the foregoing, Defendant has shown there is no genuine issue of material fact as to whether Defendant Rippberger knowingly disregarded a substantial risk of serious harm to Plaintiff and thereby violated his Eighth Amendment rights.  *See Celotex Corp.*, 477 U.S. at 323.  In opposition, Plaintiff has failed to submit any evidence to show that there are disputed issues of fact.  *Id.* at 324.  Accordingly, Defendant Rippberger is entitled to summary judgment on this claim.

### III. Doe Defendants

In the Court's service order, Plaintiff was directed to attempt to ascertain the name of John Doe Defendants and file a motion to substitute the complaint with their proper names no later than fifty-six days from the date the order was filed.  Dkt. No. 14 at 5.  The Doe Defendants included the officer who allegedly used excessive force on Plaintiff and other officers who were present and failed to intervene alongside Defendant Rippberger.  *Id.* at 2.  Plaintiff was warned that failure to file a motion to substitute Defendants' proper names in the time provided would result in the dismissal of the claims against them for failure to state a claim for relief.  *Id.* at 5.

The deadline of June 7, 2024, passed with no response from Plaintiff.  Accordingly,

9

the claims against John Doe Defendants will be dismissed for failure to state a claim for relief.

## CONCLUSION

For the reasons stated above, Defendant W. Rippberger's motion for summary judgment is **GRANTED**. Dkt. No. 28. The failure to protect claim against Defendant Rippberger is **DISMISSED** with prejudice.

The remaining claims against Doe Defendants are DISMISSED for failure to state a claim for relief as Plaintiff has failed to identify the proper defendants to proceed against them in this action.

This order terminates Docket No. 28.

**IT IS SO ORDERED.**

Dated:  _August 7, 2025_____

                                                                             _____
                                                                             BETH LABSON FREEMAN
                                                                             United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.23\05221Barksdale_grant-msj

10